UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY D. HANNAH,                          Case No. 16-11589

            Plaintiff,              Nancy G. Edmunds
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Stephanie Dawkins Davis
                                          United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

**I.    PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On May 3, 2016, plaintiff filed the instant suit seeking judicial review of the

Commissioner's decision disallowing social security disability benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District

Judge Nancy G. Edmunds referred this matter to the undersigned magistrate judge

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claims.  (Dkt. 4).  On August 22, 2016, plaintiff filed a motion for summary

judgment.  (Dkt. 14).  On October 21, 2016, the Commissioner filed a motion for

summary judgment (Dkt. 16), and plaintiff thereafter filed a reply (Dkt. 17).  The

matter is now ready for report and recommendation.

B.    Administrative Proceedings

On December 20, 2012, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 9, 2011.  (Dkt. 12-5, Pg ID 157-163).  The Commissioner initially denied plaintiff's application on May 24, 2013.  (Dkt. 12-3, Pg ID 107-121). Thereafter, plaintiff requested an administrative hearing, and on July 14, 2014, she appeared with counsel before Administrative Law Judge ("ALJ"), Melody Paige who considered her case *de novo*.  (Dkt. 12-2, Pg ID 76-105).  In a September 12, 2014 decision, the ALJ determined that plaintiff was not disabled from the alleged onset date though May 14, 2014, but was disabled beginning on May 15, 2014 within the meaning of the Social Security Act.  *Id*. at Pg ID 69.  The ALJ's decision became the final decision of the Commissioner on March 4, 2016 when the Social Security Administration's Appeals Council denied plaintiff's request for review.  *Id*. at Pg ID 36-41.

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

Prior to the established disability onset date, plaintiff was an individual

closely approaching advanced age per the Social Security regulations. 20 C.F.R.

§ 404.1563. Plaintiff has at least a high school education and also has two years

of college. (Dkt. 12-2, Pg ID 68). Plaintiff has past work experience as a travel

clerk, which was considered skilled in nature with a SVP of five and was deemed

sedentary in exertion level per the Dictionary of Occupational Titles ("DOT"), but

light as performed by plaintiff. Plaintiff claims that she has mental and physical

limitations that have prevented her from working.

A.    ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since May 9, 2011, the alleged onset date. (Dkt. 12-2, Pg ID 60). At step two, the

ALJ found that since the alleged onset date of disability, May 9, 2011, plaintiff

had the following severe impairments:

> depression; anxiety disorder; panic disorder with
> agoraphobia and PTSD. Beginning on the established
> onset date of disability, May 15, 2014, the claimant has
> had the following additional severe impairments:
> bilateral carpal tunnel syndrome; multi-level
> degenerative disc disease with stenosis of the lumbar
> spine (20 CFR 404.1520(c)).

*Id*. At step three, the ALJ found that since the onset date of disability, May 9,

2011, plaintiff did not have an impairment or combination of impairments that met

or equaled one of the listings in the regulations. *Id*. After careful consideration of

the entire record, the ALJ determined that prior to May 15, 2014, plaintiff had the

residual functional capacity (RFC):

> to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: simple,
> routine repetitive, with no fast paced work production,
> having no contact with the public and only superficial
> contact with coworkers

*Id.* at Pg ID 61. However, the ALJ determined that beginning on May 15, 2014,

plaintiff only had the RFC to perform "sedentary work as defined in 20 C.F.R.

§ 404.1567(a) except with no repetitive use of the hands bilaterally and no

vibratory tools, which is simple, routine and repetitive with no fast paced work

production requirement and no contact with the public." *Id.* at Pg ID 65-66. At

step four, the ALJ determined that since May 9, 2014, plaintiff could not perform

any past relevant work. *Id*. at Pg ID 67. At step five, the ALJ found that, prior to

May 15, 2014, given plaintiff's age, education, work experience and RFC, there

were sufficient jobs that exist in the national economy that plaintiff can perform.

*Id*. Beginning on May 15, 2014, however, the ALJ determined that there were no

jobs existing in significant numbers in the national economy that the plaintiff

could perform. *Id.* at Pg ID 69. Thus, the ALJ concluded that plaintiff was not

disabled prior to May 15, 2014, but became disabled on that date and continued to

be disabled through the date of her decision.[1]  *Id*.

B.    Plaintiff's Claims of Error

Plaintiff brings two claims of error.  First, plaintiff argues that the ALJ erred in not following SSR 83-20 which pertains to the onset of disability, and in failing to find that plaintiff had any severe physical impairments prior to May 15, 2014. (Dkt. 14, Pg ID 412-413).  Specifically, plaintiff argues that while the ALJ rightly concluded at Step 2 of the sequential evaluation that she had severe mental impairments including depression, anxiety disorder, panic disorder with agoraphobia, and Post Traumatic Stress Disorder ("PTSD") as of May 9, 2011, the ALJ erred in concluding that her back and other physical impairments were not severe until May 15, 2014.

Plaintiff does not disagree with the ALJ's ultimate finding of disability as of May 15, 2014; rather, plaintiff's contends that the ALJ erred in not considering her physical impairments *severe* as of May 9, 2011 (the alleged onset date), thereby rendering her disabled at this earlier time.  To support this conclusion, plaintiff points to physical therapy treatment records from Cooper Center just five days following her onset date which indicate that she was suffering from an increase in leg and back pain.  (Dkt. 12-9, Pg ID 378).  Plaintiff says that these records were

---

[1]  The ALJ further indicated that medical improvement "is expected with appropriate treatment.  Consequently, a continuing disability review is recommended in 18 months."  (Dkt. 12-2, Pg ID 69).

made available to the ALJ, yet they were not considered or discussed in the ALJ's opinion. Plaintiff also treated with Dr. Aggarwal in 2012, where he noted hip, lower back and shoulder pain, and that plaintiff had trouble walking. (Dkt. 12-8, Pg ID 273-274). Plaintiff also notes that contrary to the ALJ's finding, she did discuss her physical impairments with her psychiatrist, Dr. Park, for example, on November 12, 2012, reporting that she was being treated for a "pinched nerve." (Dkt. 12-8, Pg ID 253).

Plaintiff argues that the hurdle of proving a severe impairment at Step 2 is "*de minimis*"—in other words, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience. *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 243 n. 2 (6th Cir. 2007). During the period prior to the onset date, plaintiff was undergoing ongoing physical therapy for her pain at Cooper Center and was taking Tramadol and Flexeril. (Dkt. 12-9, Pg ID 375-378). Plaintiff argues that it would be one thing if the ALJ had explained why this evidence did not support a finding of a *severe* impairment, but there is a complete lack of discussion in the ALJ's analysis. As such, in light of SSR 83-20, the ALJ erred.

Plaintiff argues that the ALJ also erred in failing to follow the "treating physician rule" in determining the weight afforded to the opinions of Dr. Park and Ms. Payne, plaintiff's treating mental health professionals. (Dkt. 14, Pg ID 417).

The ALJ discounted the opinions of Dr. Park and Ms. Payne for two reasons: 1) the opinions were provided on a check-mark form and were therefore conclusory; and 2) the ultimate issue of disability is reserved to the Commissioner. Plaintiff agrees that while the questionnaires were in check-mark format, there were ample records from Dr. Park and Ms. Payne that supported their ultimate conclusions. (*See e.g.*, Dkt. 12-8, 247, 252, 253, 254, 256, 259, 262, 264, 267, 269, 273). One such record, according to plaintiff, specifically includes an explanation from Ms. Payne regarding her conclusions on why plaintiff was unable to work. (Dkt. 12-8, Pg ID 267).

Plaintiff also argues that Dr. Park and Ms. Payne did not opine on the ultimate question of disability, but rather gave their opinions about what plaintiff could still do in a work setting despite her impairments. Plaintiff says that Dr. Park and Ms. Payne provided opinions about the nature and extent of her impairments, rather than just conclude that she was "disabled" or "unable to work," therefore, their opinions are entitled to special weight under SSR 96-5p and 20 C.F.R. § 404.1527. Moreover, because Dr. Park and Ms. Payne's opinions are "well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" they should be given controlling weight." *Id.*

C.    The Commissioner's Motion for Summary Judgment

The Commissioner contends that substantial evidence supports the ALJ's finding that plaintiff did not have any severe impairments prior to May 15, 2014. (Dkt. 16, Pg ID 431).  The Commissioner argues that the ALJ reasonably concluded that while the record reflected a history of carpel tunnel syndrome and a history of back pain, it did not establish any severe medically determinable impairments imposing physical restrictions prior to her treatment with a specialist for those impairments.  (Dkt. 12-2, Pg ID 60, 66).  The Commissioner agrees that the Step 2 severity determination is a "*de minimis*" hurdle; however, so long as the ALJ proceeds to Step 3 and considers all of the claimant's impairments (both severe and non-severe) in assessing the claimant's RFC, any failure to find additional severe impairments at Step 2 is harmless.  *See Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009).  Here, the ALJ considered the evidence of plaintiff's carpal tunnel syndrome and degenerative disc disease at Step 3, and reasonably found that those conditions only established functional limitations as of the date she began treatment with a physical specialist in May 2014.

The ALJ explained that there were numerous factors underlying her finding of non-severity prior to May 2014.  First, there were objective medical records that were inconsistent with plaintiff's allegations of pain for both her back and carpel

8

tunnel condition. (Dkt. 12-2, Pg ID 66-67; Dkt. 12-9, Pg ID 347-354). Similarly, the ALJ noted that "clinical findings as to [Plaintiff's] alleged back complaints were negligible." (Dkt. 12-2, Pg ID 66). The ALJ also pointed out that plaintiff had been able to work despite any impairment. (Dkt. 12-2, Pg ID 66, 80; Dkt. 12-9, Pg ID 350). Finally, plaintiff had made express statements denying physical pain to her psychiatric providers during the entire period. (Dkt. 12-2, Pg ID 66). While plaintiff states that she could not afford an MRI to substantiate her complaints of pain, she fails to acknowledge that she had insurance for a significant period after the alleged onset date, and fails to present evidence of efforts to obtain affordable physical treatment. For all of these reasons, the Commissioner argues that substantial evidence supports the ALJ's evaluation of the record and decision to set the onset date of severe physical impairments and disability at the time plaintiff began treatment with a specialist, on May 15, 2014.

The Commissioner also argues that substantial evidence supports the ALJ's weighing of the opinion evidence from her treating psychiatrist, Dr. Park, and her therapist Ms. Payne. (Dkt. 16, Pg ID 441). The Commissioner contends that the ALJ's reasons for discounting the opinions are amply supported by the record. First, the Commissioner argues that the ALJ properly discounted the forms as conclusory where they merely elicited a "yes" or "no" answer and did not provide for any varying degree of limitation. The Commissioner also contends that the

9

ALJ reasonably pointed to substantial record evidence showing that the opinions were internally contradictory—that is, the records were inconsistent with the providers' own treatment notes. The ALJ also noted medical records that showed an improvement in plaintiff's condition and an overall conservative treatment regime. The ALJ also relied on the May 2013 opinion of State agency physician Dr. Czarnecki and determined that his opinion was more consistent with the evidence of record than the opinions of Dr. Park or Ms. Payne.

The Commissioner also noted that the ultimate determination of disability is an issue reserved to the Commissioner, and permissibly discounted the check-box questionnaires to the extent that they amounted to an opinion that plaintiff was disabled, as well as any statements in Dr. Park or Ms. Payne's treatment notes indicating that plaintiff was disabled. The Commissioner contends that the bulk of the evidence that plaintiff has pointed to does not specifically support the opinions assessing significant mental functional limitations. Indeed, symptoms and resulting diagnoses do not establish functional limitations. The Commissioner points out that plaintiff continued to work after her partial hospitalization in 2010. Moreover, Dr. Czarnecki considered the evidence of both of plaintiff's partial hospitalization and found that it did not establish disabling functional restrictions of sufficient duration. Moreover, the ALJ discounted Dr. Park's references of plaintiff's inability to work for several reasons including they could be interpreted

as only plaintiff's ability to perform her past work, most were in quotation marks suggesting that they reflected plaintiff's subjective complaints, and all addressed the issue of disability, which is an issue reserved to the Commissioner. The fact that plaintiff can point to some evidence, does not overcome the fact that substantial evidence supports the ALJ's decision.

The Commissioner also contends that plaintiff's reliance on Dr. Boneff's opinion that she had difficulties in concentration is scuttled by his later statement that "[plaintiff] does appear to have a number of cognitive strengths, which should enable her to engage successfully in work type activities of a moderate to somewhat higher degree of complexity, remembering and executing a multiple step procedure on a sustained basis in so far as her emotional status allows." (Dkt. 12-9, Pg ID 361). Indeed, State agency physician, Dr. Czarnecki, considered Dr. Boneff's opinion and determined that it supported simple work, with low stress social demands, and only work-related stress. (Dkt. 12-3, Pg ID 107, 118). Finally, the Commissioner argues that the ALJ reasonably discounted Dr. Tripi's opinion and because plaintiff did not articulate any challenge to the ALJ's evaluation, any such challenge is waived.

For all of the above reasons, the Commissioner asks that the court affirm the Commissioner's final decision because it is supported by substantial evidence and is free of harmful legal error.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545. The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky*, 167 Fed. Appx., at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of

evidence submitted by a party.") (internal citation marks omitted) (*see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be

determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three: If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four: If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Step 2

The ALJ issued a partially favorable decision, concluding that plaintiff had severe mental impairments throughout the relevant period, and that as of May 15,

2014, she also had severe physical impairments of bilateral carpal tunnel syndrome and multi-level degenerative disk disease with stenosis of the lumbar spine. (Dkt. 12-2, Pg ID 60). The ALJ determined that on May 15, 2014, the plaintiff became disabled and continued to be disabled through the date of her decision. *Id.* at Pg ID 69. Plaintiff argues that the ALJ erred when she failed to find that plaintiff's physical impairments were *severe* from the date of her alleged onset, May 9, 2011, and thus that she was disabled from that date.

At Step 2 of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled."). As noted *supra,* the applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act. In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c),

416.920(c). Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

The Commissioner properly points out that Sixth Circuit precedent establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the five-step evaluation. *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). If the ALJ continues with the remaining steps, any error at Step 2 is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks omitted); *Jackson v. Astrue*, 734

F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

The mere fact that plaintiff has been diagnosed with carpal tunnel syndrome and degenerative disk disease with stenosis of the lumbar spine is insufficient, standing alone, to indicate that either reflects a severe impairment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Rather, at Step 2, plaintiff must show that these conditions significantly limit her ability to do basic work activities. Here, the undersigned concludes that substantial evidence supports the ALJ's conclusion of non-severity prior to the date plaintiff sought treatment in May 2014. To wit, at Step 2, the ALJ opined:

> While a history of carpal tunnel had been noted in passing, there were essentially no reported complaints until the later determined onset date. Likewise, although back pain was occasionally referenced historically, no diagnostic studies were provided and the clinical findings prior to the later determined onset date did not reveal any related functional limitations. Additionally, it was not until that time that there was any objective evidence to substantiate the existence of any related medically determinable impairment.

(Dkt. 12-2, Pg ID 60). Notably, plaintiff points to physical therapy records at

Cooper Center to support her position that the ALJ erred. (Dkt. 12-9, Pg ID 376-379). A total of four documents from Cooper Center are reflected in the record—the first document, dated March 21, 2011 is an initial report, there are two progress reports dated April 18, 2011, and May 16, 2011, and a discharge summary dated June 9, 2011. *Id.* During this four-month period and consistent with the ALJ's conclusions, these medical records do not suggest any work-related limitations more than found by the ALJ. To the contrary, it appears that plaintiff's strength and mobility were improving with therapy. *Id.* Importantly, on June 9, 2011, the discharge summary reflects that plaintiff's last physical therapy session occurred on May 5, 2011 and "[plaintiff] reported that she was involved in consultations regarding her symptoms and requests discharge at this time." *Id.* at Pg ID 379. Likewise, the two page records from Dr. Aggarwal do not provide any diagnostic studies with related functional limitations. (Dkt. 12-9, Pg ID 374-375). Based on the above, any error that might exist in not deeming plaintiff's physical impairments severe at Step 2 was entirely harmless. *See e.g.*, *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *6 (W.D. Mich. July 11, 2016).

2. Treating Physician

Plaintiff also argues that the ALJ erred by discounting the weight afforded to the opinions of Dr. Tae W. Park and Barbara Payne, MA, in check-box questionnaires they each completed in June 2012. (Dkt. 12-9, Pg ID 385, 386). In

these questionnaires, both Dr. Park and Ms. Payne checked "no" to eight questions that asked whether plaintiff could frequently or continuously perform certain activities in any occupation for a full (6 to 8 hour) shift. *Id.* The questions asked whether plaintiff could: 1) make significant work-related decisions; 2) handle the stress and social interaction of a steady job; 3) respond appropriately to supervision and co-workers; 4) communicate her opinions in a professional manner; 5) appropriately handle changes in routine; 6) understand, remember, and carry out instructions; 7) perform tasks requiring concentration and memory; and 8) remain on task and able to effectively complete work related duties in light of her major depression disorder and PTSD, anxiety and panic disorder. *Id.*

An opinion from a medical source who has examined a claimant is given more weight than one from a source who has not performed an examination (a "non-examining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded still more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "non-treating source"). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted). An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any. 20 C.F.R. § 404.1527; *see Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). Moreover, "in weighing medical evidence, 'ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings.'"
*Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)). An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence. *See Simpson*, 344 Fed. Appx. at 194; *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011). This is so even though the final responsibility for the RFC determination is an issue reserved to the Commissioner. *Allen*, 2013 WL 5676254, at *15.

Regarding the forms submitted by Dr. Park and Ms. Payne, the ALJ stated:

There are two check marked forms asking [plaintiff's]

doctor and/or therapist to answer whether she can perform a variety of work related activities "frequently or continuously in any occupation for a full (six to eight hour shift)." The activities relate to her ability to make decisions, handle stress, communicate professionally, handle changes in routine, understand/remember and carry out instructions (with no reference to whether such instructions would be detailed or simple), perform tasks requiring memory and concentration or remain on tasks and effectively complete work related duties due to her conditions. The forms do not provide any varying degree of limitation or restriction and merely solicit yes or no answers, to wit (sic) both mental healthcare providers responded "no" to all questions (Exhibits 12F and 13F). The forms render the claimant incapable of performing any work whatsoever, essentially finding the claimant disabled. However, as previously indicated ultimate issues of disability are reserved to the Commissioner. Nevertheless the undersigned has considered these conclusory opinions in conjunction with the just over two years of supporting records previously summarized herein and cannot afford[] them significant weight.

(Dkt. 12-2. Pg ID 65). First, the ALJ indicated that she discounted the opinions of Dr. Park and Ms. Payne because the questionnaire forms they completed elicited conclusory responses and did not allow for any variation in the degree of limitation plaintiff allegedly had. Indeed, courts have increasingly questioned the evidentiary value of "multiple choice" opinion forms (like the one completed here) which are not supported by clinical records. *Dean v. Comm'r of Soc. Sec.*, 2016 WL 878221, at *2 (E.D. Mich. 2016). As one court observed:

It does not appear that the Sixth Circuit has directly addressed the weight afforded to check-box forms filled

out by treating physicians; however, other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such "checkmark" or "multiple choice" forms when unaccompanied by explanation or unsupported by physician's notes. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's discounting of a treating physician's opinion in a checklist form because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065-66 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . where these so called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal quotations and citation omitted); *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *18 (E.D. Mich. Feb. 10, 2012) ("Dr. Ulano merely checked off boxes on the form to indicate that [claimant] satisfied the requirements for listing § 12.05 'personality disorder' and almost satisfied the listing for § 12.04 'affective disorder' . . . [but] did not support any of these findings with any evidence in her treating record or any new observations from more recent treatments."); *Ahee v. Comm'r of Soc. Sec.*, No. 07-CV-12071, 2008 WL 4377652, at *4 (E.D. Mich. Sept. 22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

*Lane v. Comm'r of Soc. Sec.*, 2013 WL 5428739, at *9 (W.D. Mich. Sept. 26, 2013) (quoting *Doyle v. Comm'r of Soc. Sec.*, 2012 WL 4829434, at *9 (E.D. Tenn. Sept. 12, 2012), *adopted by* 2012 WL 4829213 (E.D. Tenn. Oct. 10, 2012));

*see also Ashley v. Comm'r of Soc. Sec.*, 2014 WL 1052357, at *8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms complet[ed] by treating physicians which are not []supported by clinical records[.]") (citing *Doyle, supra*); *Hyson v. Comm'r of Soc. Sec.*, 2013 WL 2456378, at *13 (N.D. Ohio June 5, 2013) (collecting cases which held the ALJ did not err by discounting a physician's opinion which used a checkbox form unaccompanied by explanation of her conclusions). As the Sixth Circuit has previously held, it is not improper for the ALJ to consider whether a physician has identified objective medical findings to support a medical opinion. *See Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion."); *see also Teague v. Astrue*, 638 F.3d 611, 615-16 (8th Cir. 2011) (the ALJ could properly give little evidentiary weight to a treating physician's "checkoff form" of functional limitations which "did not cite clinical test results, observations or other objective findings").

Plainiff argues that Dr. Park and Ms. Payne's opinions are supported by objective findings and thus the ALJ's determination to discredit this evidence is not supported by substantial evidence. However, the undersigned finds that the ALJ justifiably refused to give these opinions controlling weight. First, the

"check-the-box" forms express opinions on matters reserved to the Commissioner, namely plaintiff's RFC and the application of vocational factors. *See Curler v. Comm'r of Soc. Sec*., 561 Fed. Appx. 464, 471 (6th Cir. 2014). As was the case in *Curler*, the forms that Dr. Park and Ms. Payne filled out are not clinical notes, nor do they document a contemporaneous examination of the patient; rather, they are questionnaires that provide "information about how [a] patient's diagnosed medical condition[s]" affect her ability to function "in a regular work-setting on a day-to-day basis." *Id.* In completing the forms, Dr. Park and Ms. Payne did not explain reasons for their conclusions, and failed to include any references, notes, or test results. Because the solicited information is not a medical opinion, but rather a series of check marks addressing plaintiff's vocational limitations, but without supporting explanation or clinical records, the undersigned concludes that they are not entitled to controlling weight. *Id.*; *see also Johnson v. Comm'r of Soc. Sec*., 535 Fed. Appx. 498, 505 (6th Cir. 2013).

In addition to this reason, the ALJ concluded the limitations imposed by Dr. Park and Ms. Payne were not supported by the providers' own treatment notes and were otherwise inconsistent with other substantial evidence in the record. *See* Dkt. 12-2, Pg ID 27-33; *see also* 20 C.F.R. § 404.1527(c)(2) (a treating source opinion is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence of record); 20 C.F.R. § 404.1527(c)(3)-(4) (more weight is given to opinions that are explained and supported by medical signs and laboratory findings, and are consistent with the record as a whole). Indeed, a review of the ALJ's entire decision reflects discussion and details of evidence inconsistent with Dr. Park and Ms. Payne's considerable limitations. *See Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 804 (E.D. Mich. 2013).

The ALJ carefully traced plaintiff's mental impairment history noting that plaintiff alleged that she is unable to work primarily on the basis of her mental impairments. (Dkt. 12-2, Pg ID 62). Plaintiff represented that her symptoms have existed for many years, but that she worked in spite of them. The ALJ noted that this is confirmed in the record with notations of the disorder being historical, dating back 16 years, with indications of some treatment after her mother was disabled following a car accident, with current symptoms being treated since 2007. *Id.* (*citing* Dkt. 12-7, Pg ID 227-346). During the administrative hearing, the ALJ took account of plaintiff's counsel's statement that her symptoms were exacerbated on October 15, 2010, when plaintiff was trapped in an elevator at work for a period of anywhere from thirty minutes to three hours, depending on her accounts of the incident. (Dkt. 12-2, Pg ID 199; Dkt. 12-8, Pg ID 302). The ALJ also noted subsequent reports of sexual harassment at work and other

exacerbating events.  (Dkt. 12-2, Pg ID 62-64).  However, an onset date of May 9, 2011, has been sought as the most recent time plaintiff stopped working.  (Dkt. 12-2, Pg ID 59).

Other inconsistencies were found in Dr. Park's own treatment records.  For example, Dr. Park's earlier notes stated that plaintiff "became totally disabled from [her] job" as of May 9, 2011, yet on her May 23, 2011 visit, he opined that plaintiff became totally disabled on October 15, 2010.  (*Compare* Dkt. 12-8, Pg ID 322 with Pg ID 324).  Additionally, the ALJ indicated that Dr. Park appeared to be unfamiliar with the definition of "disability" contained in the Social Security Act and Regulations as it appeared that he was just referring to plaintiff's inability to perform her past work, which is consistent with the conclusions reached in the ALJ's decision.  Furthermore, the ALJ was influenced by Dr. Park's statements on plaintiff's disability which appear in quotation marks, and thus appeared to be the subjective reports of claimant rather than his own medical opinion.

The ALJ also acknowledged that plaintiff was admitted to an "outpatient day program" in January 2012, (Dkt. 12-2, Pg ID 63; Dkt. 12-7, Pg ID 238-244), and "began to express/articulate an inability to 'perform sequential tasks which used to be second nature'" in February 2012, (Dkt. 12-2, Pg ID 63; Dkt. 12-8, Pg ID 280).  However, as the ALJ discussed, subsequent treatment involved the relatively conservative treatment of guided meditation, encouragement to attend

spiritual services, and an increase in her Xanax. (Dkt. 12-2, Pg ID 63; Dkt. 12-8,

Pg ID 274, 277); s*ee also Lester v. Soc. Sec. Admin.*, 596 Fed. Appx 387, 389 (6th

Cir. 2015) (ALJ properly discounted treating physician's opinion where claimant

was receiving conservative treatment); *Kepke v. Comm'r of Soc. Sec.*, 636 F. Appx

625, 631 (6th Cir. 2016) ("The ALJ noted that the records indicate [the claimant]

received only conservative treatment for her ailments, a fact which constitutes a

'good reason' for discounting a treating source opinion."); *see also* 20 C.F.R.

§ 404.1527(c)(2) ("We will look at the treatment the source has provided . . . .").

Further, the ALJ noted evidence of improvement, explaining that: "session

notes from July 31, 2012, indicate that the claimant was less anxious, caring better

for her appearance, attending church and attending Michigan Works" (Dkt. 12-2,

Pg ID 64; Dkt. 12-8, Pg ID 260); "she appeared 'much better emotionally' during

a medication review on August 28, 2012 ," (Dkt. 12-2, Pg ID 64; Dkt. 12-8, Pg ID

257); and "[o]n October 9, 2012, she was noted to be proactive in terms of

following up on calls from UAW with email ," *Id.* The ALJ also noted that

plaintiff was able to care for her disabled mother. (Dkt. 12-2, Pg ID 63-64, *citing*

Dkt. 12-8, Pg ID 247, 270). The ALJ also observed that:

> throughout the treatment records the claimant is noted to
> be a good historian, who is cooperative with fluid speech
> [R. 207, 246, 276-77, 289-90, 314, 345, 347]. She was
> following up on matters relevant to obtaining short-term
> disability and Workman's Compensation benefits and

> otherwise function[ing] at a level commensurate with an
> ability to perform at least some type of work related
> activities. Additionally the claimant was quite articulate
> at [the] hearing. Despite being off psychiatric
> medications, her answers were logical and concise. Her
> presentation at [the] hearing appeared well scripted and
> her facial expressions and demeanor did not match what
> she was saying.

(Dkt. 12-2, Pg ID 64).

Finally, the ALJ relied on the opinion of consultative State agency physician, Dr. Edward Czarnecki, Ph.D to support her RFC determination. (Dkt. 12-3, Pg ID 116-118). After reviewing the available evidence of record, Dr. Czarnecki opined that plaintiff's mental functions and capacity remain grossly intact. (Dkt. 12-3, Pg ID 118). Dr. Czarnecki noted that plaintiff was "capable of sustaining activity of a moderate to higher degree of complexity with multiple steps is consistent, supported, and given great weight." *Id.* Further, Dr. Czarnecki concluded that plaintiff

> retained the mental capacity to initiate, sustain and
> complete simple tasks. She can tolerate and respond
> adequately to brief, superficial, routine, low stress social
> demands. She can tolerate routine work related stress.
> She may be moderately limited in sustaining more
> complicated and detailed work-related activity and in
> dealing with more intense, prolonged and complex social
> interaction.

*Id.*

For all of the above stated reasons, the undersigned concludes that

substantial evidence supports the ALJ's decision to discount the opinions of Dr. Park and Ms. Payne. Plaintiff attempts to point to evidence in the record that may support an opposite conclusion; however, it has long been the rule in this Circuit that we must defer to an agency's decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion [a question we do not reach here], so long as substantial evidence supports the conclusion reached by the ALJ.'" *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2017                          s/Stephanie Dawkins Davis
                                               Stephanie Dawkins Davis
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>August 15, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov